# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

CENTENNIAL INSURANCE )
COMPANY, )
         )
      PLAINTIFF, )
         )
v. )    Civil Action File No.
         )    1:07-CV-1885
JOHNNY JOHNSON, JOHN N. )
JOHNSON IV, JDM a minor, )
Individually, and JEANNIE MARIE )
GLEASON, as the natural mother and )
Guardian of JDM, a minor. )
         )
      DEFENDANTS. )

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF CENTENNIAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

COME NOW, JOHNNY JOHNSON AND JOHN N. JOHNSON, IV, Defendants herein, and file this their Response in Opposition to Plaintiff Centennial Insurance Company's Motion for Summary Judgment, and show this Court as follows:

## STATEMENT OF MATERIAL FACTS

This case arises out of an incident that occurred at Defendant John N. Johnson IV's residence in May of 2005, at a gathering of mostly high school

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

1

students.    Centennial  Insurance  Company  ("Centennial")  has  filed  a declaratory action seeking a determination from this Court as to whether the injuries  arising  from  the  above-referenced  altercation  are  covered  by  Mr. Johnson's homeowner's policy.  Jeannie Marie Gleason and JDM have filed suit  in  the  State  Court  of  Cobb  County  for  negligence  on  behalf  of Defendants Johnny Johnson and John N. Johnson IV.

On May 31st, 2005, while Mr. Johnson was out of town on business, Johnny Johnson and his sister invited some friends over because school was out  for  the  summer.    (Deposition of Johnny Johnson, generally, at p. 53). People began arriving at the Johnson residence at approximately 8:00 p.m. (Id., at p. 52).  Johnny Johnson testified that he watched JMD arrive at his home through the front door.  (Id., at p. 53).  JMD had a box of SweetWater beer with him when he arrived.  (Id., at p. 57).  Johnny had not invited JMD to the party.  (Id., at p. 104).

Johnny Johnson, his sister, and their guests congregated between the main floor and the basement of the home.  (Id., at p. 57).  JMD, his friends, Johnny's sister, and her friend were in the basement "hanging out."  (Id.). Someone  then  told  Johnny  "Hey,  this  guy's...peeing,"    and  Johnny immediately began to approach JMD, who was standing between a window

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

2

and a wall with his pants unzipped, "obviously" urinating in front of his sister and her friend. (Id., at pp. 58-60). Johnny approached JMD and asked him to stop three times. (Id., at p. 60). Instead of stopping, however, JMD stated that he had his "dick out" and continued to urinate between the window and the floor in front of the guests. (Id.).

In an attempt to make JMD "stop urinating in front of [his] sister," Johnny swung at JMD's face. (Id., at p. 63). Johnny testified that he "did not mean to hurt [JMD] in any way." (Id.). He further testified that he did not mean to "cause him damage," and "merely wanted him to stop urinating where he wasn't supposed to." (Id., at p. 118). At some point, Johnny cleaned up the urine from the floor with a towel and went outside to check on JMD. (Id., at p. 117, 67).

Contrary to Centennial's bare assertion that Johnny Johnson taunted JDM after the altercation, the evidence demonstrates that he was immediately apologetic and concerned about JMD's welfare. When Johnny found JMD outside he apologized when he saw that JMD was bleeding. (Id., at p. 67). Johnny asked JMD to come back inside the house so that he could clean him up. (Id.). He got a rag and a bag of ice and put it on JMD's face. (Id.). The next morning, Johnny Johnson met with the police and was

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

charged with assaulting JMD.  (Id., at pp. 71-72).  He pled first offender to the charges.  (Id., at p. 85).

On March 23, 2007, JMD, through his mother and guardian, filed suit against Johnny Johnson and his father, alleging claims of negligence against both of them.  Specifically, the allegations against John N. Johnson IV are claims of negligent supervision.  (*See* Complaint, <u>John Dillon Martin,</u> <u>individually and Jeannie Marie Gleason as the natural mother and guardian</u> <u>of John Dillon Martin v. Johnny Johnson and John N. Johnson IV</u>, State Court of Cobb County, CAFN 2007-A-3650-3, at p. 5, a copy of which is attached hereto as Exhibit "1").  Neither JMD nor his mother are claiming that JMD's injuries were the result of an intentional act.  In fact, in his deposition, JDM testified to the following:

> Q.   In your Complaint you have not alleged intentional harm; is that correct?
>
> A.   Are you asking me to state what I've put on  -- I mean, that's correct...
>
> Q.   It's true?
>
> A.   That's correct.

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

4

Q.     And you are not contending that he intentionally caused you harm; is that true?

A.     **I'm not contending it**.

(Depo. of JMD, at p. 45).

In August of 2007, Centennial Insurance filed a declaratory judgment action based upon six grounds:  1) that Johnny Johnson is not an "insured" within the meaning of his father's homeowner's policy; 2) that JDM's claims of negligence do not constitute an "occurrence" within the meaning of the policy; 3) JDM's claims are not covered because Johnny Johnson's actions were "expected" or "intended;" 4) that the claims constitute molestation and corporal punishment and are excluded under the policy; 5) that the claims made by JDM are not covered because he was a trespasser; and 6) the claims against John Johnson IV are excluded because they are derivative of the claims against Johnny Johnson.   However, Centennial Insurance Company is not asserting two of the above-referenced claims at this time, including the claim regarding the definition of an "insured" and the claims regarding molestation and corporal punishment.

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

## ARGUMENT AND CITATIONS OF AUTHORITY

Centennial is not entitled to summary judgment because there is an issue of genuine fact as to whether the claims asserted by JMD in the underlying tort action arise from an "occurrence" within the meaning of the policy, and regardless of whether JMD had permission to be on the property at the time of the incident, Centennial is obligated to defend and indemnify the Johnsons.

"[U]nder the rules of contract construction, [a] policy is construed against [the insurer] as the drafter of the policy and any exclusions from coverage are strictly construed."  Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc., 250 Ga. App. 673 (2001).   Only "unambiguous" provisions will be construed as being detrimental to the insured.  Jefferson Ins. Co. v. Dunn, 269 Ga. 213 (1998).  Here, when viewed in a light most favorably towards John Johnson, the evidence establishes that there is a genuine issue of material fact as to whether the altercation between Johnny Johnson and JMD was an "occurrence," whether the injuries to JMD were "expected" or "intended," and whether Centennial is obligated to defend the Johnsons regardless of JMD's permissive status on their property.  As a result, Centennial's Motion for Summary Judgment should be denied.

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

6

A. **The altercation between Johnny Johnson and JMD constituted an "occurrence" within the meaning of the Centennial Policy, and JMD's injuries were not "expected" or "intended."**

There is a genuine issue of material fact as to whether the altercation between JMD and Johnny Johnson was an "occurrence," and whether JMD's injuries were "expected" or "intended" within the meaning of the Centennial policy. Though Centennial divides the policy's exclusionary language into two separate arguments, whether the altercation as an occurrence that resulted in expected or intentional injuries revolves around the same issue: if JMD's injuries were accidental and unexpected, then they are an occurrence and are not excluded by the intentional injuries provision.

First and foremost, Centennial's coverage defenses are limited by Jeannie Marie Gleason and JMD's allegations in the underlying tort action. In a declaratory action, to determine whether a claim is covered by an insurance policy, the court must look to the allegations of the complaint. Presidential Hotel v. Canal Ins. Co., 188 Ga. App. 609 (1988); Great American Ins. Co. v. McKemie, 244 Ga. 84 (1979). Here, the allegations asserted by JMD and his mother against the Johnsons are **negligence**. (Exhibit "A"). There are no allegations of intentional injury. Therefore,

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

because coverage is determined by the allegations in the underlying tort action, and the underlying allegations here are simple negligence, Centennial's policy applies.

Further, even if Centennial is not bound by the language of the underlying complaint, the language chosen by Centennial to define accident is sufficient within itself to create a genuine issue of material fact as to whether Johnny Johnson's actions constitute an occurrence under the policy. "Occurrence" is defined as "the accident that causes bodily injury, nonbodily injury, property damage, or loss." (See Policy, at p. 22). However, "accident" is not defined in the policy. The fact that the meaning of "occurrence" hinges upon the meaning of the term "accident," and "accident" is undefined, the definition of "accident" should be construed broadly against Centennial. *See* Owners Ins. Co. v. James, 295 F. Supp. 2d 1354 (2003)(stating that only clear and unambiguous terms, which are capable of only one reasonable interpretation, will be construed to the benefit of the insurer).

However, Centennial's definition of "accident" is broad enough to encompass the subject altercation without further analysis by the Court. Centennial quoted the court's definition of "accident" in Georgia Farm

OWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

<u>Bureau Mutual Ins. Co. v. Hall County</u>, which was "an event which takes place **without one's foresight or expectation or design**." 262 Ga. App. 810 (2003) (emphasis added). *See also* <u>Custom Planning & Development, Inc. v. American Nat'l Fire Ins. Co.</u>, 270 Ga. App. 8 (2004)(stating that for purposes of defining an "occurrence," an "accident" is an unexpected happening rather than one occurring by intention or design); <u>Aetna Cas. & Sur. Co. v. Starrett</u>, 102 Ga. App. 278 (1960)(stating that the negligence of an insured does not prevent an injury from being accidental where insured has no intention of producing the injury). Therefore, under Centennial's own definition, even without construing undefined terms against Centennial, an accident encompasses any event that occurs without foresight or design, regardless of the outcome.

When the term accident is construed broadly against Centennial, it is clear that it encompasses even events that are brought upon by voluntary actions. Georgia law distinguishes between insurance coverage for accidental injuries and coverage for injuries caused by accidental means. An accidental injury is an injury that is unexpected but may arise from a conscious voluntary act. <u>Winters v. Reliance Standard Life Ins. Co.</u>, 209 Ga. App. 369 (1993). By contrast, an injury from accidental means is one

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

that is the unexpected result of an unforeseen or unexpected act that was involuntarily or unintentionally done.   Id.

Moreover, Centennial's definition of the term "accident" coincides with the language of the intentional act exclusion as interpreted by Georgia law.   "Intent," for purposes of the exclusion for intentional or expected bodily injury, means having a desire to bring about particular consequences that are substantially certain to result from the act.   Allstate Ins. Co. v. Justice, 229 Ga. App. 137 (1997).   The intentional act exclusion *only* applies when the insured intends **both the act and the injury.** Id. Having the mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of "intent," within meaning of the exclusion.   Id.   In other words, the question is not whether the insured acted intentionally; rather, it is whether, in so acting, he intended or expected to cause injury. **If the insured acted intentionally, but without the expectation or intention of causing injury, coverage would apply.** Colonial Penn Ins. Co. v. Hart, 162 Ga. App. 333 (1982).   "[M]ere knowledge and appreciation of a risk, **short of a substantial certainty**, is not the equivalent of intent." West American Ins. Co. v. Merritt, 216 Ga.App. 822, 823 (1995).

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

Under Centennial's own definition of accident, there exists a genuine issue of material fact as to whether the altercation between JMD and Johnny Johnson was an occurrence, and whether JMD's injuries were expected or intended.  Johnny Johnson testified that someone told him that JMD was urinating in his basement, and that when he approached, JMD was "obviously" urinating in between the window and the wall in front of his sister and her friend.  (Id., at pp. 58-60).  Johnny approached JMD and asked him to stop three times.  (Id., at p. 60).  However, JMD ignored his requests and continued to urinate between the window and the floor in front of the guests.  (Id.).  Therefore, **in an attempt to make JMD "stop urinating in front of [his] sister**," Johnny swung at JMD's face.  (Id., at p. 63).  Johnny testified that he "**did not mean to hurt [JMD] in any way**."  (Id.).  He further testified that he **did not mean** to "cause him damage," and "merely wanted him to stop urinating where he wasn't supposed to."  (Id., at p. 118).  The complaint filed by JMD and his mother does not even allege intentional injury, and JMD testified that he is not contending that Johnny Johnson intentionally injured him.  He merely swung at JMD in an attempt to make him stop urinating in his floor and in front of his sister.  His intention was to make JMD stop, not to injure him.

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

11

There is no evidence that the altercation between Johnny Johnson and JMD was the product of foresight or design under <u>Custom Planning</u> and <u>Hall County</u>.   To the contrary, the evidence shows that Johnny Johnson, on a whim, swung at JMD in an attempt to stop him from urinating.   There is no evidence of foresight or design – Johnny Johnson acted spontaneously. Under <u>Justice</u>, both the act and the injury must be intentional in order to trigger the exclusion. Here, because Johnny Johnson did not intentionally injure JMD, the intentional act exclusion does not apply.   Rather, JMD's injuries were accidental under <u>Aetna</u>, and the altercation constitutes an "occurrence" within the meaning of the policy.

The case of <u>Kennedy v. State Farm Fire and Cas. Co.</u>, cited by Centennial, is distinguishable from the case at bar. 738 F. Supp. 511 (1990). In <u>Kennedy</u>, the insured testified that he and a man named Metcalf got into an altercation on a boat dock.   The insured and Metcalf first got into a verbal altercation, and then the insured stated that he intentionally struck Metcalf "at least" two times in the face with closed fists.   <u>Id.</u>, at 512.   Though the insured testified that he had only punched Metcalf two times, the evidence showed that Metcalf suffered a split lip, a torn ear, and several bruises around his head and face.   <u>Id.</u>   Unlike the insured in <u>Kennedy</u> who

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

repeatedly punched another man in the face after a verbal altercation, here, Johnny Johnson swung his fist one time at JMD in an attempt to make him quit urinating in his floor and in front of his guests.  Moreover, he testified that he did not mean to injure JMD, and apologized to him immediately after the altercation.  At the very least, when construed in the light most favorable to the insureds, these facts demonstrate that Johnny Johnson has rebutted Centennial's allegations of intentional injury, and that the incident between Johnny Johnson and JMD constitutes an "occurrence" and the policy's intentional act exclusion does not apply.

Moreover, Centennial attempts to bolster their arguments by inserting inadmissible evidence of Johnny Johnson's criminal record.  As "evidence" of Johnny Johnson's intent to injure, Centennial attached an uncertified copy of Johnny Johnson's **first offender** plea and **indictment** to their Motion. However, neither the first offender plea nor indictment are admissible and properly considered on this Motion for Summary Judgment.  *See* <u>Matthews v. State</u>, 268 Ga. 798 (1997)(first offender records are inadmissible); <u>Curtis v. State</u>, 282 Ga. App. 322 (2006)(witness cannot be impeached with instances of specific misconduct unless that misconduct resulted in the conviction of a crime).  Not only are they not admissible, but even if they

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

13

were, they have no bearing on Johnny Johnson's subjective intent to injure or not injure JMD.

B. **Whether JMD was on the Johnson property with permission is irrelevant to the issue of whether Centennial has an obligation to provide coverage for JMD's bodily injury.**

The issue of whether or not JMD was a trespasser on the Johnson property has no bearing on whether Centennial has a duty to provide the Johnsons with a defense and indemnify them for JMD's bodily injury claim. The homeowner's policy in question states that "[w]e won't pay *medical expenses* for any person who is at an insured place without permission." (Policy, at p. 15). (Emphasis added).   Notably, the exclusion does not apply to <u>bodily injuries</u> that may be suffered by trespassers or other persons on the property without permission.  Therefore, even if JMD was a trespasser at the time of the incident, Centennial still owes the Johnsons a defense and indemnification for JMD's bodily injury claims.   Therefore, without addressing JMD's status as to whether he was permitted to be at the Johnson residence at the time of the incident, Centennial is still obligated to provide a defense and indemnify the Johnsons in the underlying negligence suit.

C. **Centennial's arguments regarding derivative liability are without merit.**

First and foremost, Centennial's arguments regarding derivative liability are based upon the assumption that the altercation between JMD and Johnny Johnson is not an "occurrence," and is excluded by the intentional acts or trespasser provision of the Johnson policy. As demonstrated above, however, these contentions are incorrect and there is a genuine issue of material fact as to whether the altercation and resulting injuries are covered under the policy.

Second, the claims asserted against John N. Johnson IV are not derivative of the claims against Johnny Johnson. The claims asserted against John N. Johnson are negligent supervision, which is separate from the claims of negligent infliction of injury asserted against Johnny Johnson. Therefore, irrespective of whether there is coverage for the claims against Johnny Johnson, there is no reasonable dispute as to the negligence claims asserted against John N. Johnson.

Further, the Harden v. State Farm Fire & Cas. Co. case cited by Centennial is distinguishable from the case at bar. 269 Ga. App. 732 (2004). In Harden, the claims against the husband were barred by an exclusion

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

within the policy for willful and malicious acts, which included the sexual abuse that he perpetrated upon a minor child in his care.  The husband failed to present evidence to rebut the allegations that he intentionally and sexually abused the child.  <u>Id.</u>  Here, Johnny Johnson has presented evidence to rebut the allegations of intentional injury by Centennial, and has created a genuine issue of material fact as to whether the Centennial policy provides coverage. As a result, there is not only an issue of fact as to whether the claims alleged against Johnny Johnson are covered, but there is a genuine issue of material fact as to whether there is coverage for the claims against John N. Johnson as well.

## **CONCLUSION**

Centennial is not entitled to summary judgment because there is an issue of genuine fact as to whether the claims asserted by JMD in the underlying tort action arise from an "occurrence" within the meaning of the policy, whether JMD's injuries were "expected" or "intended," and whether JMD had permission to be on the insured's property at the time of the incident.  "[U]nder the rules of contract construction, [a] policy is construed against [the insurer] as the drafter of the policy and any exclusions from coverage are strictly construed."   <u>Old Republic Union Ins. Co. v. Floyd</u>

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

Beasley & Sons, Inc., 250 Ga. App. 673 (2001). Here, when viewed in a light most favorably towards John Johnson, the evidence establishes that there is a genuine issue of material fact as to whether the altercation between Johnny Johnson and JMD was an "occurrence," whether the injuries to JMD were "expected" or "intended."

Further, it is irrelevant whether JMD was a trespasser on the Johnson property at the time of the accident because even if he were to be a trespasser, Centennial still has an obligation to defend and indemnify the Johnsons for JMD's bodily injury claims, which are not excluded under the policy. Finally, Centennial's arguments as to derivative liability have no merit because there is coverage for the claims against Johnny Johnson, and even if there were not, the negligent supervision claims against John N. Johnson are nevertheless covered. As a result, Centennial's Motion for Summary Judgment should be denied.

Respectfully submitted,

DOWNEY & CLEVELAND, LLP

By: /s/ W. CURTIS ANDERSON
W. CURTIS ANDERSON
Ga. State Bar No. 018470
Attorneys for Defendants Johnson

17

DOWNEY & CLEVELAND, LLP
Attorneys at Law
288 Washington Avenue
Marietta, Georgia 30060
(770) 422-3233

*AH* *Curtis Anderson*    (770 423 9119

## IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

JOHN DILLON MARTIN, individually,        )
and JEANNIE MARIE GLEASON as             )
the natural mother and guardian of       )
John Dillon Martin,                      )
                                         )
      Plaintiffs,                        )
                                         )
v.                                       )     CIVIL ACTION
                                         )     FILE NO. 2007A 3650-3
JOHNNY JOHNSON and                       )
JOHN N. JOHNSON IV, jointly              )     $118 DEPOSIT PAID       $5.00 RUSH FEE
and severally,                           )
                                         )
      Defendants.                        )

### SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

    You are hereby summoned and required to file with the Clerk of said court and serve

upon the Plaintiff's attorney, whose name and address is:

            Robert F. Webb, Attorney for Plaintiff
                 Webb & D'Orazio
           2551 Roswell Road, Suite 201          STATE COURT OF COBB COUNTY
                Marietta, GA 30062                    12 EAST PARK SQUARE
                (770) 952-7000                        MARIETTA, GA 30090-9630

an answer to the complaint which is hereby served upon you, within 30 days after service of this

summons upon, exclusive of the day of service. If you fail to do so, judgment by default will be

taken against you for the relief demanded in the complaint.

    This 23 day of March, 2007

                       Clerk of Cobb County State Court

              By: _Diane Webb_____
                      Deputy Clerk



EXHIBIT
1

## IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

COBB COUNTY, GA.
FILED IN OFFICE

2007 MAR 23  PM 4: 25

DIANE B. WEBB
STATE COURT CLERK-11

| | |
|---|---|
| JOHN DILLON MARTIN, individually, and JEANNIE MARIE GLEASON as the natural mother and guardian of John Dillon Martin, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNNY JOHNSON and JOHN N. JOHNSON IV, jointly and severally, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION
FILE NO. __2007A 3650-3__

### COMPLAINT

COME NOW, Plaintiffs JOHN DILLON MARTIN, individually and JEANNE MARIE GLEASON, as the mother and natural guardian of John Dillon Martin, and state their claims against the Defendants as follows:

1.  Defendant JOHNNY JOHNSON is a natural person residing in Cobb County, Georgia and may be served with process at 1002 Chippendale Trail, SW, Marietta, GA 30064.

2.  Defendant JOHN N. JOHNSON IV is a natural person residing in Cobb County, Georgia and may be served with process at 1002 Chippendale Trail, SW, Marietta, GA 30064.

1

## FACTS COMMON TO ALL COUNTS

3.    Defendant JOHN N. JOHNSON IV owns a home and property and resides at 1002 Chippendale Trail, SW, Marietta, GA 30064 (*the residence* hereinafter).

4.    Defendant JOHNNY JOHNSON is the son of Defendant JOHN N. JOHNSON IV and resides at *the residence*.

5.    On May 31, 2005, Defendants threw a party at *the residence*.

6.    Plaintiff JOHN DILLON MARTIN attended the party at *the residence* as a social guest.

7.    Alcoholic beverages were furnished to persons attending said party at *the residence* on May 31, 2005.

8.    Many of the persons attending Defendants party were under the age of 21 years.

9.    While hosting said underage drinking party at *the residence*, Defendant JOHNNY JOHNSON consumed alcoholic beverages in a sufficient quantity so as to affect his judgment and his actions.

10.    On May 31, 2005 Defendant JOHNNY JOHNSON was 18 years of age.

11.    While under the influence of alcohol, Defendant JOHNNY JOHNSON negligently struck Plaintiff JOHN DILLON MARTIN in the face.

12.    Defendant JOHNNY JOHNSON did not intend to seriously injure Plaintiff JOHN DILLON MARTIN.

13.    Plaintiff JOHN DILLON MARTIN did, in fact, receive a serious injury as a result of Defendant JOHNNY JOHNSON's actions.

2

14.   Plaintiff JOHN DILLON MARTIN has suffered severe mental pain and anguish and sustained the following serious physical injuries: he received stitches to the right orbital and right facial area; he suffered fractures of the right maxillary sinus and orbital walls, along with an orbital floor blowout fracture; there was mild flattening of the right cheek from the direction of the blow to the face; he received surgical intervention for correction of this facial fracture, reconstruction of the orbital floor, reconstruction of the orbital rim with plates, screws, pins, silicone sheeting and other techniques; and he suffers from a permanent degree of facial asymmetry and permanent facial scarring.

15.   Plaintiff JEANNIE MARIE GLEASON has incurred medical expenses for the care and treatment of her minor son's, Plaintiff JOHN DILLON MARTIN, injuries in the amount of $22,729.85.

16.   Defendants' home (*the residence*) is, and at all times mentioned was, under the auspices and control of Defendant JOHN N. JOHNSON IV.

17.   Defendant JOHN N. JOHNSON IV provided and condoned the use of *the residence* for underage drinking parties.

18.   Prior to May 31, 2005 there had been other underage drinking parties at *the residence*.

19.   Defendant JOHN N. JOHNSON IV knew of Defendant JOHNNY JOHNSON's proclivity and propensity to conduct at underage drinking parties *the residence* similar to that which occurred on May 31, 2005.

3

20.    Prior to May 31, 2005, Defendant JOHN N. JOHNSON IV knew of Defendant JOHNNY JOHNSON's proclivity and propensity to drink alcoholic beverages.

21.    Prior to May 31, 2005 Defendant JOHN N. JOHNSON IV knew of Defendant JOHNNY JOHNSON's proclivity and propensity to act violently towards others when under the influence of alcohol.

## COUNT I

### NEGLIGENCE OF DEFENDANT JOHNNY JOHNSON

22.    Plaintiffs incorporate herein the allegations set forth in paragraphs 1 through 21 inclusive.

23.    Defendant JOHNNY JOHNSON's negligent actions on May 31, 2005 were the direct and proximate cause of Plaintiff MARTIN's injuries.

24.    Defendant JOHNNY JOHNSON is liable to Plaintiffs for the full amount of all general and special damages directly and proximately caused by said Defendant's negligence.

## COUNT II

### NEGLIGENCE OF DEFENDANT JOHN N. JOHNSON IV

25.    Plaintiffs incorporate herein the allegations set forth in paragraphs 1 through 24 inclusive.

4

26.    On May 31, 2005, Defendant JOHN N. JOHNSON IV, in disregard of his duties, was negligent in the following respects:

(a)    In providing *the residence* to Defendant JOHNNY JOHNSON without adult supervision knowing of Defendant JOHNNY JOHNSON's propensity and proclivity to have underage drinking parties therein.

(b)    In not maintaining proper and adequate supervision at *the residence* on May 31, 2005;

(c)    In not exercising due care under the circumstances for the safety of Plaintiff MARTIN;

(d)    In neglecting and failing to furnish sufficient and efficient adults, attendants and help necessary to render and maintain the conditions in the home safe from the effects of misconduct, mischief, and rowdyism of Defendant JOHNNY JOHNSON;

(e)    In neglecting and failing to provide supervision over Defendant JOHNNY JOHNSON, although Defendant JOHN N. JOHNSON IV, on the above date, knew and was well aware of his mischievous, undisciplined, dangerous, and violent nature and proclivities; and

(f)    In negligently permitting Plaintiff MARTIN to be exposed to the dangers of

5

the mischief and undisciplined conduct of Defendant JOHNNY JOHNSON, without providing adequate or sufficient controls and safeguards for Plaintiff MARTIN.

27.    Defendant JOHN N. JOHNSON IV's negligence was the direct and proximate cause of Plaintiffs' general and special damages.

## COUNT III

## PUNITIVE DAMAGES

28.    Plaintiffs incorporate herein the allegations set forth in paragraphs 1 through 27 inclusive.

29.    Defendants' actions demonstrate a conscious indifference to the consequences suffered by the Plaintiffs.

30.    Accordingly, Plaintiffs are entitled to an award of punitive damages against the Defendants.

WHEREFORE, Plaintiffs pray:

1.    That Plaintiffs have and recover judgment against the Defendants for the relief sought pursuant to Counts I, II, and III;

2.    That process issue as provided by law;

3.    That trial by jury is demanded; and

6

4.     That Plaintiffs have such other and further general relief as the Court deems appropriate under the circumstances.

WEBB & D'ORAZIO

ROBERT F. WEBB
Attorney for Plaintiffs
Georgia Bar Number 744700

2551 Roswell Road, Suite 201
Marietta, GA 30062
770-952-7000

7

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served the following counsel of record with a true and correct copy of the foregoing pleading by depositing said copy in the United States Mail, with sufficient postage affixed thereon, and properly addressed to the following:

Robert M. Darroch, Esq.
Adam C. Joffe, Esq.
Goodman McGuffey Lindsey & Johnson, LLP
2100 Tower Place
3340 Peachtree Road, NE
Atlanta, Georgia 30326-1084

This 3rd day of July, 2008.

DOWNEY & CLEVELAND, LLP

By: /s/ W. CURTIS ANDERSON
W. CURTIS ANDERSON
Ga. State Bar No. 018470
Attorneys for Defendants Johnson

18